UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANLEY STEEMER INTERNATIONAL, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Case No. 2:13-cv-0050 |
| | : | Judge George C. Smith |
| | : | Magistrate Judge Deavers |
| | : | |
| SUSAN HURLEY a/k/a SUSAN VOGES, *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## TEMPORARY RESTRAINING ORDER

On January 17, 2013, Plaintiff initiated this case and filed a Motion for Temporary

Restraining Order. The Court promptly scheduled this matter for a hearing on the temporary

restraining order for 2 p.m. on January 18, 2013. Defendants' former counsel was informed of

the hearing, however, he notified the Court at 11:00 a.m. today that he was no longer

representing Defendants. The Court has spoken with Defendant Voges who represented that

Defendants would not be appearing for the hearing today. Technically, Defendants, through

former counsel, received notice of this case and the hearing. Regardless, Plaintiff has still met

the requirements for seeking a temporary restraining order without notice pursuant to Rule 65(b)

of the Federal Rules of Civil Procedure. Based on the evidence presented by Plaintiff, the Court

finds that a temporary restraining order is warranted in this case.

On July 26, 2009, Susan Hurley, as Franchise Owner, and Stanley Steemer executed the

Franchise Agreement, wherein Hurley obtained an exclusive license to operate a Stanley

Steemer carpet and upholstery cleaning business in Boone, Campbell, and Kenton counties,

Kentucky.  (Verified Complaint ¶ 14).[1]  At the time she executed the Franchise Agreement, Ms. Hurley had been a Stanley Steemer franchisee for over twenty years.  Thus, the Franchise Agreement allowed her to continue operating as a Stanley Steemer franchisee.  The Franchise Agreement required Ms. Hurley to perform certain acts such as making royalty payments to Stanley Steemer, and spend not less than 10% of gross sales on advertising and to make payments of National Advertising Fees.

An audit of Ms. Hurley's franchise was conducted from December 3 through December 11, 2012.  (Verified Complaint ¶ 20).  That audit was a follow-up to a 2009 audit of Ms. Hurley's franchise that uncovered underreported sales and the failure of Ms. Hurley to meet her advertising spending requirement.  (*Id.*).  The 2012 audit uncovered that Ms. Hurley had defrauded Stanley Steemer by misrepresenting her franchise's annual sales.  (*Id.*).  The audit revealed that Ms. Hurley had under-reported $74,606.00 in sales for the period 2009 through September 2012.  The audit revealed that Ms. Hurley had paid her carpet cleaning technicians based on the full amount logged by each truck.  (*Id.*).  Ms. Hurley then reported a lesser amount to Stanley Steemer and did not pay royalties on that amount.  (*Id.*).  The 2012 audit also uncovered that Ms. Hurley had not met her 10% advertising spending requirement for the recent years.  (*Id.* ¶ 24).

On or about January 3, 2013, Stanley Steemer learned, from sources other than Ms. Hurley, that Ms. Hurley was operating another carpet cleaning business under the name "Custom Clean," and had ceased to operate her Stanley Steemer franchise.  (*Id.* ¶ 27).  Stanley Steemer was contacted by a customer via a Facebook post stating:

---

[1] The following facts are set forth for the limited purpose of addressing the immediate motion before the Court.  It should be noted that any findings of fact and conclusions of law made by a district court in addressing a request for injunctive relief are not binding at a trial on the merits. *See United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

> I called the 1800 Steemer and it forwarded me to 859-342-7333[.] The woman answered Custom Clean. She says they just went thru a name change recently but are still using Stanley Steemer equiptment [sic] and product. I had referred a friend to them because of the name and reputation. Who are these people? My neighbor saw their van in our subdivision , a few days ago. It is the orange SS color but has Custom Clean on the sides.  I called West Chester office and was put in VM for a Paul Carlson and have not heard back. I have been using SS for years. The woman at Custom Clean said if I called Cincinnati and asked for SS to service me, they would refer me to her? What?

(*Id.*, Ex. C).

Ms. Hurley's husband, Defendant Voges, who worked as her franchise's manager, wrote a letter to Stanley Steemer customers stating:

> Hello,
>      Let me start by saying thank you for your business and support over the years. We have been serving the Northern Kentucky area as Stanley Steemer for the past twenty three years, do [sic] to the continuing increases in franchise fees and advertising fees we felt it was in our best interest to move away from Stanley Steemer so that we could continue to serve our customers with the same quality work for an affordable price[.] I cannot justify a price increase to our customers so that they can line their pockets with our money in Colombus [sic] Ohio. As of 1/1/2013 we will be changing our name to Custom Clean Carpet Cleaners.We will continue to use our equipment and standards of cleaning the employees are the same group and the "ONLY" thing changing is the name. Some things we will be adding are when we are on our way we will either e-mail or text you a picture of the Crew Chief in route, we now will also have the flexability [sic] to give our customers a greater savings on our additional products. Once again let me thank you for your business and support and we hope that you will continue on with us as a Home Town Small Business.
>
>      Keep our money here in Ky and our employees working.

(*Id.* ¶ 28, Ex. D).  Stanley Steemer corporate received a copy of this letter on January 3, 2013.

(*Id.* ¶ 29).  Upon learning that Ms. Hurley had ceased operating her Stanley Steemer franchise and had begun to operate another carpet cleaning business under the name "Custom Clean," D. Ryan Jankowski, Vice President of Legal Affairs & Chief Administrative Officer, called the number for Ms. Hurley's franchise.  (*Id.* ¶ 30). The phone was answered as "Custom Clean" by Defendant Jeff Voges, who told Mr. Jankowski that he had acquired the carpet cleaning business

from Ms. Hurley and that it was no longer affiliated with Stanley Steemer.  (*Id*.).  When Mr.

Jankowski subsequently reached Ms. Hurley by phone, she advised him that she had "liquidated"

her Stanley Steemer carpet cleaning business and sold and/or leased it, including selling or

leasing the vans, to Jeff Voges.  (*Id*. ¶ 31).

Ms. Hurley's new business continues to use the phone number of her prior business, as

well as the Stanley Steemer cleaning system and equipment.  (*Id*. ¶¶ 34-35).  Ms. Hurley has not

offered Stanley Steemer the right of first refusal to purchase any Stanley Steemer Carpet

Cleaning Machine and/or van as required by Article III.C.1.e of the Franchise Agreement. (*Id*. ¶

36). Ms. Hurley's franchise and the new business is operating four vans titled to SSNKY.  (*Id*.).

Those vans are still painted in Stanley Steemer's trademarked color.

On January 11, 2013, Stanley Steemer delivered to Ms. Hurley and her counsel a Notice

of Termination of Franchise Agreement immediately terminating her Stanley Steemer franchise

and demanding that she comply with all post termination requirements as set forth in Article XV

of the Franchise Agreement.  (*Id*. ¶ 38).  Among those contractual requirements were that Ms.

Hurley pay all sums due and owing, cease using Stanley Steemer's Trademarks, cease using the

Stanley Steemer system (including but not limited to methods, procedure and techniques,

machines, vehicles, and equipment), cease using all telephone numbers associated with her

franchise, and comply with Stanley Steemer's right of first refusal to purchase any Stanley

Steemer Carpet Cleaning Machine and/or van in which a machine is mounted as otherwise

required by Article III.C.1.e of the Franchise Agreement. (*Id*.).

---

[2] The four vans are: an '06 Ford van, VIN # 1FTNE24L26DA74562; an '08 Ford van, VIN# 1FTNE24LX8DA88986; an '09 Ford van, VIN# 1FTNE24L69DA04065; and an '12 Ford van, VIN# 1FTNE2EL3CDA27535.

Based on this information, the Court finds that Plaintiff has a strong likelihood of success on the merits of their claims for breach of contract, trademark infringement and unfair competition.  Without such relief, Plaintiff would suffer irreparable injury.  The issuance of this injunction will not cause substantial harm to anyone other than Defendants.  Further, the public interest will be served by the issuance of this injunction.

Accordingly, Plaintiff Stanley Steemer's Motion for a Temporary Restraining Order is hereby **GRANTED**, and this Court hereby enters a Temporary Restraining Order as follows:

(1) Defendants are temporarily enjoined and restrained from operating or using in their business (including but not limited to parking said vehicles in or around their business) any vehicles painted with a color violating United States Patent and Trademark No. 3,182,240, covering the distinctive color Stanley Steemer vans are painted and described as:  "The color yellow-orange is claimed as a feature of the mark. The color yellow-orange, which is the approximate equivalent of Pantone Matching System 143C, is applied to the entire surface of a van used in performing the services."

(2) Defendants are temporarily enjoined and restrained from holding themselves out as a present or former Stanley Steemer business franchisee.

(3) Defendants are temporarily enjoined and restrained from using, by advertising or in any manner whatsoever, any methods, procedures and techniques associated with the Stanley Steemer system in which Stanley Steemer has a proprietary right, title or interest.

(4) Defendants are temporarily enjoined and restrained from using all telephone numbers and classified listings and advertisements.  Defendants must immediately transfer to Stanley Steemer any and all telephone numbers associated with Ms. Hurley's franchise.

(5) Stanley Steemer of Northern Kentucky, Inc. is temporarily enjoined and restrained from operating under the Stanley Steemer name.

Stanley Steemer shall post a bond or cash in the amount of $ 1,000.00, no later than close of business on Tuesday, January 22, 2013.  This Temporary Restraining Order shall remain in effect for 14 days.  *See* Fed. R. Civ. P. 65(b).

**IT IS SO ORDERED.**


*s/ George C. Smith*
**Filed January 18, 2012          GEORGE C. SMITH, JUDGE**
**at 2:15 p.m.                      UNITED STATES DISTRICT COURT**